**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | | |
|---|---|---|
| In re: | ) | 3:08-CV-690-ECR-VPC |
| | ) | |
| DARREN ROY MACK, | ) | |
| | ) | |
|     Debtor, | ) | **Order** |
| _____ | ) | |
| | ) | |
| THE PROBATE ESTATE OF CHARLA MACK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DARREN ROY MACK | ) | |
| _____ | ) | |

Now before the Court is Darren Roy Mack's appeal from the bankruptcy court's order granting partial summary judgment to the Probate Estate of Charla Mack ("the Estate").  The bankruptcy court's order rejected Mr. Mack's argument that the Estate's claims had been released, and also found the claims to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).  For the reasons stated below, the bankruptcy court's order will be affirmed in part and reversed in part.

## I. Background

On August 26, 2005, Mr. Mack filed for relief under Chapter 7 of the Bankruptcy Code.  (Appellant's Appendix ("AA") 2.)  At the time, Mr. Mack's wife, Charla Mack, had already filed for divorce,

and those proceedings were pending in the Family Division of the Second Judicial District Court of the State of Nevada ("family court").  (Id.)  On November 16, 2005, Mrs. Mack filed an adversary complaint against Mr. Mack in the bankruptcy court entitled "Complaint to Determine Dischargeability of Certain Debts (11 U.S.C. §§ 523(a)(5) and (15))."  (AA 5.)  On January 9, 2006, the family court issued a ruling from the bench that incorporated the terms of the parties' agreement regarding their financial rights and obligations to one another as the order of the court, making it binding on the parties.  (AA 109.)  The family court thereby awarded the following sums at issue in the present appeal to Mrs. Mack: (1) $500,000 from Mr. Mack's ERISA retirement account, to be distributed in more or less equal installments over a period of five years in lieu of spousal support ("$500,000 Obligation") (AA 85); (2) $480,000, to be used to purchase a vehicle and a house ("$480,000 Obligation") (id.); (3) $15,500 for previously ordered support arrearages ("$15,500 Obligation") (AA 90); and (4) $6500 from an account the Macks had previously owned together ("$6500 Obligation") (AA 90-91).[1]

On June 12, 2006, Mr. Mack killed Mrs. Mack and attempted to kill the Honorable Charles Weller, the family court judge who had been presiding over the Macks' divorce proceedings.  The Estate later substituted in for Mrs. Mack as plaintiff in the bankruptcy court proceedings.  On June 20, 2007, the family court, with the

---

[1] The bankruptcy court and the parties have often referred to the $15,500 Obligation and the $6500 Obligation collectively as the "$22,000 Obligation."  For reasons that will become apparent below, we find it more appropriate to treat these two obligations separately.

2

Honorable David Huff sitting by designation from the Nevada Supreme
Court in the Macks' divorce proceeding, entered an "Order for Entry
of Order Nunc Pro Tunc." (AA 64-69.)  This order confirmed that the
family court's January 9, 2006, oral ruling was a binding order of
the family court, though it had not been reduced to writing before
the tragic events of June 12, 2006. (AA 68-69.)  Mr. Mack appealed
the matter to the Nevada Supreme Court, which affirmed Judge Huff's
June 20, 2007, order, as well as the underlying January 9, 2006,
oral order by Judge Weller. <u>Mack v. Estate of Mack</u>, 206 P.3d 98,
111 (Nev. 2009).

On April 11, 2008, the Estate moved for summary judgment in the
bankruptcy court regarding the dischargeability of the $500,000
Obligation, the $480,000 Obligation, the $15,500 Obligation, and the
$6500 Obligation. (AA 47.)  On November 18, 2008, the bankruptcy
court granted in part and denied in part the Estate's motion,
finding that all of the claims were valid and nondischargeable
pursuant to 11 U.S.C. § 523(a)(5), but ruling that an evidentiary
hearing was required to determine, in light of Mrs. Mack's death,
the amount of the Estate's claim relating to the $500,000 Obligation
and denying the Estate's motion insofar is it argued that the claims
were nondischargeable pursuant to 11 U.S.C. § 523(a)(15). (AA 628-
29.)

Mr. Mack's appeal was transferred to this Court from the
Bankruptcy Appellate Panel on December 30, 2008, together with Mr.
Mack's then-pending motion for leave to appeal. (#1.)  The Estate
opposed (#3) the motion for leave to appeal (#1), and Mr. Mack filed
a motion for leave to file a reply (#7).  Mr. Mack's filed his

Opening Brief (#6) in the appeal on January 30, 2009.  The Estate filed its Answering Brief (#8) on February 17, 2009.  The filing of Mr. Mack's Reply Brief (#20) was delayed pursuant to several stipulated extensions, allowing the Nevada Supreme Court to rule first on the validity of Judge Huff's June 20, 2007 Order.  Mr. Mack filed his Reply Brief (#20) on July 1, 2009, after the Nevada Supreme Court's decision in <u>Mack</u>, 206 P.3d at 98, and the denial of Mr. Mack's petition for rehearing.

## II. Jurisdiction

The district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory orders described in 28 U.S.C. § 158(a)(2).  A party may also, "with leave of the court," appeal from other interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3).  See <u>In re City of Desert Hot Springs</u>, 339 F.3d 782, 787 (9th Cir. 2003) (noting that the district court must hear appeals from final decisions of the bankruptcy courts, but it is within the discretion of the district court to hear appeals of interlocutory orders).  Here, Mr. Mack asserts that we have jurisdiction over his appeal pursuant to section 158(a)(1) and section 158(a)(3), and he filed both a notice of appeal and a motion for leave to appeal (#1).  See <u>Ryther v. Lumber Prods., Inc. (In re Ryther)</u>, 799 F.2d 1412, 1414 (9th Cir. 1986) (noting that if a litigant is unsure about the nature of an order, the litigant should file both a notice of appeal and a motion for leave to appeal in the bankruptcy appellate court or district court).

4

The Estate opposed (#3) Mr. Mack's motion for leave to appeal (#1), arguing that the bankruptcy court's order was not a final judgment, order or decree.  Mr. Mack has filed a motion for leave to file a reply (#7).  We need not decide, however, whether the bankruptcy court's order is best considered a final judgment, order or decree in the meaning of 28 U.S.C. § 158(a)(1), because even if the bankruptcy court's order were interlocutory, we would exercise our discretion to hear the appeal pursuant to 28 U.S.C. § 158(a)(3). It appears that efficient resolution of this case would be promoted by addressing Mr. Mack's objections immediately, even if the bankruptcy court's order may not be final in all respects.

Thus, Mr. Mack's motion for leave to appeal (#1) will be granted, and his motion for leave to file a reply (#7) will be denied as moot.  We turn now, therefore, to the merits of Mr. Mack's appeal.

### III. Discussion

Mr. Mack asserts three arguments on appeal.[2]  First, Mr. Mack argues that the bankruptcy court erred by determining that the claims of the Estate against Mr. Mack were not released by the terms of an April 13, 2007, settlement agreement.  Second, Mr. Mack asserts that the bankruptcy court erroneously found the $480,000

---

[2] A fourth argument, relating to the question of whether the family court's January 9, 2006, oral ruling was a binding order, creating enforceable obligations for Mr. Mack and valid claims for Mrs. Mack, was definitively decided against Mr. Mack by the Nevada Supreme Court since the filing of this appeal.  Mack, 206 P.3d at 111. Mr. Mack acknowledges the Nevada Supreme Court's decision in his Reply Brief, and no longer presses this argument.  (Reply Brief at 3 (#20).)

1  Obligation, the $15,500 Obligation, and the $6500 Obligation to be

2  prepetition claims.  Finally, Mr. Mack argues that the bankruptcy

3  court erroneously determined the $480,000 Obligation and the $6500

4  Obligation to be in the nature of alimony, maintenance and support.[3]

5  We will address each of these arguments separately.

6      A. Standard of Review

7      When reviewing a decision of the bankruptcy court, the district

8  court functions as an appellate court and applies the standards of

9  review generally applied in the federal courts of appeal.  See

10 Sambo's Rests., Inc. v. Wheeler (In re Sambo's Rests., Inc.), 754

11 F.2d 811, 814 (9th Cir. 1985).  Thus, the bankruptcy court's factual

12 findings are reviewed for clear error, and its conclusions of law

13 are reviewed de novo.  Dawson v. Wash. Mut. Bank, F.A. (In re

14 Dawson), 390 F.3d 1139, 1145 (9th Cir. 2004).  Summary judgment is

15 appropriate where the evidence demonstrates that there are no

16 genuine issues of material fact for trial and the moving party is

17 entitled to judgment as a matter of law.  Barboza v. New Form, Inc.

18 (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008).  A genuine issue

19 of material fact exists if, viewing all the evidence in the light

20

21      [3] In his Reply Brief (#20), Mr. Mack also challenges the
   bankruptcy court's determination that the $500,000 Obligation is in
22 the nature of alimony, maintenance or support. (Reply at 19-22
   (#20).)  Mr. Mack failed to raise this argument in his statement of
   issues presented, or elsewhere in his Opening Brief.  (See Opening
23 Brief at 5 (#6) ("The issues presented are as follows: [...] (d)
   Whether the bankruptcy court erred in finding on summary judgment that
24 the $480,000 obligation and the $22,000 obligation . . . were in the
   nature of alimony, maintenance and support").)  Thus, Mr. Mack's
25 arguments regarding the nature of the $500,000 Obligation, raised for
   the first time in his Reply Brief (#20), will not be considered by the
26 Court.  See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n
   appeal, arguments not raised by a party in its opening brief are
27 deemed waived.").

28                                  6

most favorable to the nonmoving party, a reasonable fact-finder could decide in that party's favor.  Id.

### B. The Estate's Claims Were Not Released

Mr. Mack asserts that the Estate's claims against him were released by the terms of an April 13, 2007, "Settlement Agreement and Release of All Claims" ("Settlement Agreement").  (AA 726-731.) Mr. Mack was not a party to the Settlement Agreement, which was executed by Randal Kuckenmeister, as special administrator of the Estate, Joan Mack (Mr. Mack's mother), Palace Jewelry and Loan ("Palace") (a Nevada corporation of which Joan Mack is President), and Soorya Townley (Charla Mack's mother).  Mr. Mack, however, asserts that the Settlement Agreement constituted a "global settlement" in which Joan Mack sought to "buy global peace for herself and her family . . . ."  (Reply Brief at 4 (#20).)  This global peace, Mr. Mack argues, includes release of all the Estate's claims against Mr. Mack's bankruptcy estate.  We disagree.

Mr. Mack's argument, though somewhat unclear, appears to be that he is an intended third-party beneficiary of the Settlement Agreement.  This argument, in turn, depends on the notion that Mr. Mack may be considered an "heir" of Joan Mack: the release, to which the Estate agreed, was of any "actions, causes of action, suits, debts . . ." that it or Soorya Townley might have against "Palace and Joan, together with their heirs, successors, assigns . . . ." (AAA 729-30.)  Mr. Mack argues that he is an "heir" of Joan Mack, and thus the Estate's claims against him were released under the terms of the Settlement Agreement.

7

Whether an individual is an intended third-party beneficiary of a contract "depends on the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." <u>Canfora v. Coast Hotels & Casinos, Inc.</u>, 121 P.3d 599, 605 (Nev. 2005) (internal quotation marks omitted). Mr. Mack's reading of the Settlement Agreement fails because, among other things, Joan Mack is alive. It is hornbook law that a living person has no heirs. <u>See, e.g.</u>, <u>Irving Trust Co. v. Day</u>, 314 U.S. 556, 562 (1942) ("Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person."); <u>see also</u> NEV. REV. STAT. § 41.085 (defining "heir" as "a person who, under the laws of this State, would be entitled to succeed to the separate property of the decedent if he had died intestate"). Thus, Mr. Mack is not Joan Mack's heir, even if he might become so at some point in the future.

Mr. Mack proposes that the parties to the Settlement Agreement may not have had the legal term of art "heir" in mind when they drafted the Settlement Agreement, and they could have meant "the people who Joan Mack has designated as her heirs in her estate planning documents, which would include Mr. Mack." (Reply Brief at 4 (#20).) There is no evidence in support of this notion. Indeed, the Settlement Agreement is a classic example of legalese; there is no doubt, in context, that the legal meaning of "heir" was the intended meaning.[4] Moreover, the Settlement Agreement's

---

[4] The full language of the sentence at issue is the following: "Except for the obligations incurred by the terms and conditions of this Agreement, Soorya and Kuckenmeister, on behalf of Charla and her heirs, successors, assigns, predecessors, children, family members,

8

1  "Preliminary Statements" specifically describe the matters at issue

2  between the parties, namely, a lawsuit in Nevada State Court between

3  Palace and Charla regarding possession and ownership of a ring and

4  watch (referred to in the agreement as "the State Court Lawsuit")

5  and certain claims Charla had alleged against Joan Mack (referred to

6  as "the Alleged Disputes").  (AA 726.)  If the parties had intended

7  the release of the Estate's claims against Mr. Mack, there would

8  have been explicit mention of those claims in the preliminary

9  statements of the Settlement Agreement.[5]

10       We conclude that the Estate's claims against Mr. Mack were not

11  released by the Settlement Agreement.  Rather, the Settlement

12  Agreement released all claims among the parties to the Settlement

13  Agreement.  This release was intended to be the "broadest possible

14

15  insurers and insurance carriers, trusts, agents, attorneys,
    accountants and representatives, hereby release and discharge Palace
16  and Joan, together with their heirs, successors, assigns, agents,
    attorneys, insurers and insurance carriers, trusts, accountants and
17  representatives, as well as their respective officers, directors,
    managers, agents, employees, representatives, successors, heirs,
18  assigns, attorneys, accountants and affiliates, including Mack & Mack,
    LLC, Mack and Mack II, LLC, the Joan Rae Mack Exemption Trust Created
19  Under the Dennis Alan Mack and Joan Rae Mack Family Trust, any and all
    trusts for which Joan was, is or shall be trustee, and any and all
20  entities in which Joan had, has or will have an interest, from any and
    all actions, causes of action, suits, debts, dues, sums of money,
21  accounts, reckonings, bonds, bills, specialties, covenants, contracts,
    controversies, agreements, variances, trespasses, damages, judgments,
22  executions, claims, demands, costs, expenses and liabilities
    whatsoever, known or unknown, at law or in equity, of, upon, or by
23  reason of any matter, cause or theory whatsoever including, without
    limitation, those arising out of or in connection with the State Court
24  Lawsuit and the Alleged Disputes that the releasing party ever had,
    now has or hereafter can, shall or may have."  (AA 727-28.)
25

26       [5] The Settlement Agreement specifically contemplates that the
    Preliminary Statements, "though summary in nature . . . shall be
27  considered in construing, interpreting and enforcing the terms and
    conditions of this Agreement. . . ."  (AA 727.)

28                                    9

release" of claims the parties to the agreement may have had against one another.  (AA 728.)  There is no evidence that Mr. Mack was an intended third-party beneficiary, such that the release also extends to the Estate's claims against Mr. Mack.

Our conclusion on this issue is in no way inconsistent with our previous ruling in the interpleader action <u>Mack v. Kuckenmeister</u>, No. 3:08-CV-370-ECR-RAM, Mr. Mack's arguments to the contrary notwithstanding.  (<u>See</u> Answering Brief (#8), Ex. A (Order of Jan. 22, 2009 (#28)).)  In our Order (#28), we did not find, as Mr. Mack appears to believe, that Joan Mack was in privity with Mr. Mack. (<u>See</u> Opening Brief at 27 (#6).)  Rather, we ruled that Joan Mack, as trustee, had no independent interest as to which party in the family court proceedings — Mr. Mack or Mrs. Mack — received the $500,000 she sought to interplead.  On this basis, we found that Joan Mack's interest as trustee had been fully represented in the earlier state court proceedings by the two parties to those proceedings, not just Mr. Mack.  We further concluded that re-litigation of the issue before this Court, either by her or by Mr. Mack, was barred.  These findings are irrelevant to the matter now before the Court, relating to the purported release of the Estate's claims against Mr. Mack.

In short, the Estate's claims against Mr. Mack were not released by the Settlement Agreement.  We therefore affirm the bankruptcy court's ruling on this issue.[6]

---

[6] Mr. Mack made similar arguments regarding the purported release of the Estate's claims against his bankruptcy estate before the Nevada state court in the probate proceedings relating to the Estate of Charla Mack.  (<u>See</u> AA 508-512.)  Mr. Mack's arguments were rejected there, as well.  The Estate has not argued that Mr. Mack is precluded from raising the arguments again here because of the state court's

1    C. The Exception to Nondischargeability of 11 U.S.C.
        § 523(a)(5)(A) Does Not Apply to the Estate's Claims

2

3        Under the Bankruptcy Code as it existed at the time Mr. Mack

4    filed for bankruptcy,[7] 11 U.S.C. § 523(a) describes certain

5    exceptions to discharge.  As relevant to this appeal, section 523

6    provides:

7        (a) A discharge under section 727, 1141, 1228(a), 1228(b), or
            1328 of this title does not discharge an individual debtor from
8        any debt –
            [. . .]
9            (5) to a spouse, former spouse, or child of the debtor,
            for alimony to, maintenance for, or support of such spouse
10           or child, in connection with a separation agreement,
            divorce decree or other order of a court of record,
11           determination made in accordance with State or territorial
            law by a governmental unit, or property settlement
12           agreement, but not to the extent that —
                (A) such debt is assigned to another entity,
13               voluntarily, by operation of law, or otherwise . . .;
                or
14               (B) such debt includes a liability designated as
                alimony, maintenance, or support, unless such
15               liability is actually in the nature of alimony,
                maintenance or support.

16
17   Thus, under section 523(a)(5), a debt to a spouse, former spouse, or

18   child of the debtor that is "in the nature of alimony, maintenance

19   or support" is nondischargable.  Section 523(a)(5)(A), however,

20   provides an exception to that rule: if such a debt is assigned to

21   another entity, either voluntarily or by operation of law, the debt

22   is dischargeable.

23   ruling.   It is worth noting, however, that the result of our
     independent analysis coincides with that of the Nevada state court in
24   a related action, as well as that of the bankruptcy court in the
     proceedings from which this appeal is taken.
25

26       [7] Mr. Mack filed for bankruptcy prior to October 17, 2005, so the
     version of the Bankruptcy Code in effect prior to the Bankruptcy Abuse
     Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119
27   Stat. 23, governs this appeal.

28                                      11

Although a few courts have found otherwise, the better view is that the determination of whether the exception to nondischargeabilty of section 523(a)(5)(A) applies is made upon facts in existence at the time the debtor files the bankruptcy petition, rather than upon facts in existence on the date of the dischargeability hearing.  See Leppaluoto v. Combs (In re Combs), 101 B.R. 609, 615 (B.A.P. 9th Cir. 1989) (so stating); McIntyre v. White (In re McIntyre), 328 B.R. 356, 361-62 (Bankr. D. Mass. 2005) (noting that "a formula comprised of delinquency plus ill fate was never intended to equal absolution pursuant to § 523(a)(5)(A)"); but see Brunhoff v. Brunhoff, Jr. (In re Brunhoff), 4 B.R. 381, 382 (Bankr. D. Fla. 1980) (alimony debt became dischargeable upon the death of a spouse because the passing of the debt to the ex-wife's estate was an assignment to another entity by operation of law).  As of the date on which Mr. Mack filed his bankruptcy petition, Mrs. Mack was alive, and her claims against Mr. Mack's bankruptcy estate had not yet been assigned to her Estate.  The bankruptcy court correctly determined, therefore, that the exception to nondischargeability found in section 523(a)(5)(A) does not apply to the Estate's claims.

> D. The $480,000 Obligation, and the $15,500 Obligation are in the Nature of Alimony, Maintenance or Support, but the $6500 Obligation is a Property Settlement.

The bankruptcy court determined that the $500,000 Obligation, the $480,000 Obligation, the $15,500 Obligation, and the $6500 Obligation were all "in the nature of alimony, maintenance or support" in the meaning of section 523(a)(5).  (AA 632.)  Mr. Mack has conceded that the $15,500 Obligation is in the nature of

12

1   alimony, maintenance or support.  (Reply Brief at 22 (#20).)  He has

2   waived his arguments with regard to the $500,000 Obligation.  (See

3   supra note 3.)  Thus, only Mr. Mack's challenges to the bankruptcy

4   court's analysis of the $480,000 Obligation and the $6500 Obligation

5   are at issue here.

6        The determination of whether an obligation is in the nature of

7   alimony, maintenance or support in the meaning of section 523(a)(5)

8   is a matter of federal, rather than state, law.  E.g. Shaver v.

9   Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984).  "The intent of the

10  parties and the substance of the obligation are the touchstone of

11  the § 523(a)(5) analysis in the Ninth Circuit."  Seixas v. Booth (In

12  re Seixas), 239 B.R. 398, 404 (B.A.P. 9th Cir. 1999).  Although

13  certain factors are commonly discussed in the case law, the court

14  should consider all of the relevant circumstances.  Id.; see also 1-

15  6 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.04[2] ("Virtually all of

16  the other specific factors cited by courts in support of their

17  decisions . . . are, in fact, considered only because they shed

18  light on the issues of intent and the purpose actually served by the

19  obligation in question.").

20       The parties' statements on the record are persuasive, albeit

21  not necessarily conclusive, evidence of the parties' intent.  See

22  Leppaluoto v. Combs (In re Combs), 101 B.R. 609, 616 (B.A.P. 9th

23  Cir. 1989).  At the January 9, 2006, hearing, the family court noted

24  on the record that the $480,000 was intended to be used by Mrs. Mack

25  to purchase a vehicle and a house.  (AA 85.)  Mr. Mack acknowledged

26  that he had no questions about what he had heard during the course

27  of the hearing regarding the terms of the agreement as they had been

28                                    13

1  placed on the record, that he had nothing that he wished to add or

2  subtract from the agreement, and that he agreed to be bound by the

3  agreement.  (AA 107.)  Mrs. Mack similarly agreed that the

4  discussion on the record accurately reflected the parties'

5  agreement.  (Id.)

6      Nevertheless, Mr. Mack argues that the best way to obtain

7  evidence of the intent of the parties regarding the $480,000

8  Obligation is not to look to the transcript of the January 9, 2006

9  hearing.  Rather, Mr. Mack argues that the better approach would be

10  to "examine and cross-examine the divorce and bankruptcy counsel for

11  the parties, and even Judge Weller."  (Reply Brief at 15 (#20).)

12  Mr. Mack speculates that, despite what was stated on the record by

13  the parties and the family court, in the process of reducing the

14  agreement to writing the counsel for the parties might have changed

15  the characterization of the $480,000 obligation.  (Id.)

16      Mr. Mack's argument borders on the absurd.  In essence, he

17  elevates speculation as to what post-hoc justifications and

18  explanations might be offered by counsel for the parties, "and even

19  Judge Weller," over statements actually made by the parties and the

20  family court on the record contemporaneously to the parties'

21  agreement and the adoption of that agreement as a binding order of

22  the family court.  Moreover, Mr. Mack appears here once again to be

23  attempting to avoid the family court's oral order on the basis that

24  it was never reduced to writing.  (See id.)  Mr. Mack's attempt to

25  indirectly relitigate that issue is not well taken.

26      In addition to looking to the intent of the parties, we must

27  look to the substance of the obligation.  In re Seixas, 239 B.R. at

28

404.  Normally, this portion of the analysis is important when the parties have labeled an obligation as a "property settlement," say, in their written settlement agreement, but the circumstances indicate that the obligation was intended by the parties to serve as spousal support.  <u>See, e.g.</u>, <u>Shaver</u>, 736 F.2d at 1317.  Here, the substance of the obligation is described in much more specific terms: as noted above, the obligation is not just labeled as alimony, maintenance, or support, but specifically allocated to purchase of a vehicle and a house for Mrs. Mack.

Where an obligation serves "to provide a necessity of life, it is ordinarily held to be nondischargeable maintenance support."  <u>In re Combs</u>, 101 B.R. at 615-16 (citing <u>Quinn v. Quinn (Matter of Quinn)</u>, 44 B.R. 622, 624-25 (Bankr. W.D.Mo. 1984)).[8]  There is no question that housing and transportation constitute such necessities of life.  <u>See, e.g.</u>, <u>Yeates v. Yeates (In re Yeates)</u>, 807 F.2d 874, 879 (10th Cir. 1986).  Mr. Mack does question, however, whether the $480,000 was intended for "necessary necessities"; the idea here is that Mrs. Mack did not in fact need that money for housing or transportation, and that the debt should therefore be treated as a property settlement.

---

[8] Mr. Mack's argument that the Missouri case cited in <u>In re Combs</u> is "incorrect in the Ninth Circuit" is without merit.  (<u>See</u> Reply Brief at 16 (#20).)  Although <u>Matter of Quinn</u> uses somewhat different wording than the often-cited "touchstones" described in <u>In re Seixas</u>, 239 B.R. at 404, the analysis in <u>Matter of Quinn</u> is functionally identical, looking both to the intent of the parties and the substance of the obligation.  <u>See</u> <u>Matter of Quinn</u>, 44 B.R. at 625 ("Regardless of the characterization of an award in the divorce instrument itself, it is the actual function or purpose of that award which determines whether it is an award of maintenance, and thus nondischargeable, or a dischargeable property settlement.")

1    We decline Mr. Mack's invitation to inquire into whether the
2 $480,000 was for "necessary necessities," or merely necessities.
3 Courts that have engaged in such analysis are generally examining
4 obligations that have been labeled as property settlements in
5 marital settlement agreements by parties who were not considering
6 the potential implications of such labels in bankruptcy proceedings.
7 E.g. In re Yeates, 807 F.2d at 879.  In such circumstances, courts
8 will look through the label to determine whether the debts were
9 actually intended as support, based on the circumstance that the
10 property is necessary to the obligee spouse or former spouse for the
11 acquisition of daily necessities.  Id.  Here, there is no need for
12 such an analysis: the parties intended the $480,000 obligation to
13 provide Mrs. Mack some of the necessities of life, namely, housing
14 and transportation.  The substance of the award is congruent with
15 the parties' intent; there is no indication that Mrs. Mack would not
16 have used the funds as intended.  With the "touchstone" of the Ninth
17 Circuit's section 523(a)(5) analysis thereby satisfied, there is no
18 precedent requiring that we also engage in the further inquiry
19 suggested by Mr. Mack.
20    With regard to the $6500 Obligation, the parties' intent and
21 the substance of the obligation is similarly straightforward to
22 determine from the transcript of the January 9, 2006, hearing in the
23 family court.  Here, however, the bankruptcy court erred in
24 determining that the obligation was in the nature of alimony,
25 maintenance or support, rather than a property settlement.  The
26 $6500 represents half of a certain account that the family court
27 noted needed to be split "to sever the financial entanglements of
28

16

these parties." (AA 90.) There is no indication in the record that this amount was intended as alimony, maintenance or support, or that Mrs. Mack needed that relatively small sum, however it might have been designated, in order to provide for her daily necessities. As such, this obligation is not "in the nature of alimony, maintenance or support" in the meaning of section 523(a)(5).

In short, Mr. Mack does not challenge the bankruptcy court's determination that the $15,500 Obligation was in the nature of alimony, maintenance or support, and he waived his arguments relating to the $500,000 Obligation. The $480,000 Obligation is in the nature of alimony, maintenance or support, as the bankruptcy court correctly determined. The $6500 Obligation, however, is a property settlement, and thus does not fall under the section 523(a)(5) exception to discharge; the bankruptcy court's determination to the contrary must be reversed.

The $6500 Obligation may or may not, however, fall under the section 523(a)(15) exception to dischargeability.[9] The Estate had

---

[9] Section 523(a)(15) provides an exception to discharge for any debt:

    (15) not of the kind described in [section 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
        (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
    (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

1  raised section 523(a)(15) in the alternative to its arguments

2  relating to section 523(a)(5), but the bankruptcy court denied

3  summary judgment on that issue without explanation.  (AA 629.)  It

4  seems likely that the bankruptcy court considered the matter moot in

5  light of its section 523(a)(5) ruling, which we have here reversed

6  in relation to the $6500 Obligation.  Since the matter is no longer

7  moot, on remand the bankruptcy court will have to perform the

8  section 523(a)(15) analysis.

9      E. The Bankruptcy Court Correctly Determined that the Estate's
        Claims are Prepetition Claims.

10

11      Mr. Mack argues that the bankruptcy court erred in finding the

12  $480,000 Obligation, the $15,500 Obligation, and the $6500

13  Obligation to have arisen prepetition.  The bankruptcy court relied

14  on Ninth Circuit precedent stating that "where the parties could

15  have fairly contemplated a claim prior to bankruptcy, the claim will

16  be held to have arisen prepetition, even when the actual right to

17  payment matures postpetition."  In re Emelity, 251 B.R. 151, 156

18  (Bankr. S.D. Cal. 2000) (citing Cal. Dep't of Health Servs. v.

19  Jensen (In re Jensen), 995 F.2d 925, 930 (9th Cir. 1993)).  In In re

20  Emelity, the court found that the filing of dissolution proceedings

21  triggered a prepetition contingent liability for the debtor spouse.

22  Id. at 156.  Even though the division of the parties' community

23  property did not actually occur until after the debtor filed for

24

25  11 U.S.C. § 523(a)(15).
        There does not appear to be any question that the $6500
26  Obligation is a debt incurred "in the course of a divorce or
    separation . . ."; the bankruptcy court must determine in the first
27  instance, however, whether section 523(a)(15)(A) or (B) apply.

28                                    18

bankruptcy, some such division was found to be within the fair contemplation of the parties as of the filing date.  Id.  Thus, the obligee former spouse's claim to that community property was treated as a prepetition claim.

Mr. Mack argues that the "fair contemplation" test described in In re Emelity does not apply to the facts of this case, or at least that it does not lead to the conclusion reached by the bankruptcy court.  Mr. Mack argues that the settlement agreement entered into by the parties and incorporated as the order of the family court at the January 9, 2006, hearing constituted "a valid post-petition agreement for consideration separate from the original debt obligation for support, alimony, and division of property, arising out of the marriage."  (Reply Brief at 9 (#20).)  Thus, according to Mr. Mack, the agreement reached by the parties was not within the fair contemplation of the parties prepetition; rather, the obligations are better viewed as new, voluntary obligations incurred postpetition.

The parties' agreement of January 9, 2006, adopted as the order of the family court, did encompass issues going beyond division of marital property and spousal support: the parties intended a "full and final settlement of all financial rights and obligations, one by the other, arising out of their relationship, marital or otherwise." (AA 94.)  The $480,000 Obligation, the $15,500 Obligation, and the $6500 Obligation, however, all relate to matters arising out of the Macks' marital relationship: as noted above, the $480,000 Obligation and the $15,500 Obligation are "in the nature of alimony, maintenance or support," while the $6500 Obligation involves a

1  division of marital property.  Mr. Mack's argument that they

2  constitute obligations wholly separate from the parties' dissolution

3  proceedings lacks merit.  The bankruptcy court did not err in

4  finding that these obligations were within the fair contemplation of

5  the parties once divorce proceedings were filed, even if their

6  precise amounts were not determined until the postpetition

7  agreement, adopted as an order of the family court on January 9,

8  2006.  Under Ninth Circuit precedent, these obligations are properly

9  treated as prepetition claims, and the bankruptcy court's ruling to

10  that effect will be affirmed.

11      F. Whether or not the Estate's Claims Should be Allowed or
        Disallowed under 11 U.S.C. § 502(b)(5) is Not at Issue in this
12      Appeal

13      Mr. Mack further argues that even if the Estate's claims are

14  nondischargeable pursuant to section 523(a)(5), they nonetheless

15  should be disallowed under 11 U.S.C. § 502(b)(5).  (Reply Brief at

16  11 (#20).)  Section 502(b)(5) provides that if an objection to a

17  claim is made, and "such claim is for a debt that is unmatured on

18  the date of the filing of the petition and that is excepted from

19  discharge under section 523(a)(5)," the court must disallow the

20  claim.  Mr. Mack's argument fails for two reasons.  First, whether

21  the Estate's claims should be allowed or disallowed pursuant to

22  section 502 was not at issue in the Estate's motion for summary

23  judgment, nor is it at issue in this appeal.  The Estate sought

24  summary judgment on the issue of whether certain debts were

25  dischargeable, not whether the claims for those debts were

26  allowable.  (AA 60; see also AA 565-566 (the bankruptcy court states

27  that whether the Estate's claims will ultimately be allowed or

28                              20

1  disallowed "is not a matter that is before the Court").)   Second,
2  section 502(b)(5) only applies when an objection to a claim has been
3  made; otherwise, a claim is deemed allowed under 11 U.S.C. § 502(a).
4  It appears from our record that no objections to the Estate's claims
5  have been filed.   (AA 565.)  Mr. Mack's arguments relating to
6  section 502(b)(5), therefore, are without merit.

7
8                          **IV. Conclusion**

9       The Estate's claims were not released by the April 13, 2007
10  Settlement Agreement.  Further, the $480,000 Obligation, $15,500
11  Obligation and the $6500 Obligation are properly considered
12  prepetition claims.  Mr. Mack conceded that the $15,500 Obligation
13  is "in the nature of alimony, maintenance or support" in the meaning
14  of section 523(a)(5), and the bankruptcy court's determination to
15  that effect with regard to the $480,000 Obligation was correct.  Mr.
16  Mack's arguments relating to the $500,000 Obligation's nature were
17  waived.  As such, the bankruptcy court's ruling that the $500,000
18  Obligation, the $480,000 Obligation, and the $15,500 Obligation are
19  valid, prepetition claims excepted from discharge under section
20  523(a)(5) is affirmed.

21       The bankruptcy court erred, however, in determining the $6500
22  Obligation to be in the nature of alimony, maintenance or support.
23  Thus, the section 523(a)(5) exception to discharge does not apply to
24  that claim, and the bankruptcy court's order to the contrary must be
25  reversed.  The $6500 Obligation may, however, be subject to the
26  section 523(a)(15) exception to discharge; the bankruptcy court will
27  have to resolve that issue in the first instance on remand.

28                                  21

1     **IT IS THEREFORE HEREBY ORDERED THAT** Appellant's Motion for

2  Leave to Appeal (#1) is **GRANTED**.

3

4     **IT IS FURTHER ORDERED THAT** Appellant's Motion for Leave to File

5  a Reply (#7) is **DENIED** as moot.

6

7     **IT IS FURTHER ORDERED THAT** the bankruptcy court's Order of

8  November 18, 2008, is **AFFIRMED IN PART AND REVERSED IN PART** and the

9  matter is **REMANDED** to the bankruptcy court for further proceedings

10  not inconsistent with this Order.

11

12     The Clerk shall enter judgment accordingly.

13

14

15  DATED: September 28, 2009.

16

17                       UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

22